## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR229 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| SHANLENNA F. BURGESS and | ) | |
| STEPHANIE A. MONK, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before on the Court on Shanlenna F. Burgess's (Burgess) Motion to Suppress Evidence (Filing No. 22). Stephanie L. Monk (Monk) joins the motion (Filing Nos. 24-25). The defendants are charged in the Indictment with possession with the intent to distribute more than 100 grams but less than one kilogram of a mixture or substance containing Phencyclidine (PCP) in violation of 21 U.S.C. § 841(a)(1) and (b)(1). **See** Filing No. 1. The charge stems from the warrantless search of the defendants and their possessions on May 21, 2005, at the Greyhound Bus Station in Omaha, Nebraska. The defendants seek to suppress all evidence seized from them.

The Court held an evidentiary hearing for the motion to suppress on August 30, 2005. At the hearing, the Court heard the testimony of Nebraska State Patrol (NSP) Investigators Jason Scott (Investigator Scott) and Richard Lutter (Investigator Lutter). The Court received into evidence a photographs of Listerine bottles (Exhibit 101). A transcript (TR.) was prepared and filed in this matter on September 8, 2005. **See** Filing No. 32. The defendants filed a pre-hearing brief (Filing No. 23). The government also filed a pre-hearing brief (Filing No. 27). No post-hearing briefs were filed.

### FINDINGS OF FACT

Investigator Scott has been with the NSP since September 1998 and is currently assigned to the commercial interdiction unit (TR. 4). Investigator Lutter has been with the NSP

for approximately thirteen years, and a member of the commercial interdiction unit for approximately nine years (TR. 77). It is Investigators Scott and Lutter's responsibility to patrol commercial means of travel such as the airport and the train and bus stations to disrupt the flow of narcotics through the state of Nebraska (TR. 4). Investigator Scott is five feet ten inches tall and weighs 190 pounds (TR. 93). Investigator Lutter is six feet five inches tall and weighs 280 pounds (TR. 93). On May 21, 2005, at approximately 6:00 a.m., Investigators Scott and Lutter were patrolling the Greyhound Bus Station (TR. 5-6, 78). Investigator Scott saw the defendants exit a bus (TR. 5-6). Investigators Scott and Lutter were wearing plain clothes and neither their service weapons or badges were visible (TR. 6, 93).

Investigator Scott observed Monk exit the bus with a black roll-away suitcase and begin to walk around the bus terminal (TR. 6-7). Monk drew Investigator Scott's attention because Monk did not appear to know where she was going and eventually put the suitcase back onto the bus (TR. 7). Monk then exited the bus again (TR. 7). Investigator Scott continued to watch Monk who began a conversation with Burgess (TR. 7). The two women, who appeared to be traveling together, walked to the northeast corner of the terminal and began using marijuana (TR. 7). Investigator Scott was familiar with the scent of burning marijuana and its use from his experience and training in law enforcement (TR. 8). The defendants were passing a "joint" between themselves and a male (TR. 8). Specifically, Investigator Scott saw the three each smoking a cigarette by pinching one end with the forefinger and thumb, then passing the cigarette around in a circle to the others (TR. 9). Investigator Scott testified the behavior is not consistent with smoking a tobacco cigarette, but with marijuana use (TR. 9).

Investigator Scott continued to watch the defendants but did not make contact at that time because the officers he was patrolling with were making contact with other unrelated individuals (TR. 10-11). Approximately five to ten minutes later, as the passengers began re-boarding the bus, Investigator Scott informed the other officers of his observations (TR. 11-12). At that time, Investigators Lutter and Saddlefield told Investigator Scott they had also observed Monk smoking by herself and smelled burning marijuana (TR. 12).

Investigator Lutter first observed the defendants walking west away from the corner at 16th and Jackson Streets going toward the terminal building and past the officer (TR. 79).

Investigator Lutter saw Burgess pinch out the burning end of a cigarette and noticed the overwhelming smell of burnt marijuana in the area coming from the women (TR. 79, 98). Investigator Lutter is familiar with the odor of burning marijuana through his training and experience in law enforcement (TR. 79-80). Investigator Lutter and his partner did not make contact with the women at that time because they were in the process of contacting an unrelated suspect (TR. 101).

Before the bus was ready for departure, Investigators Scott and Lutter boarded the bus and told the defendants they (the officers) were investigating marijuana use at the terminal (TR. 14, 82). Investigator Scott took a position kneeling on the driver's seat of the bus (TR. 65). Investigator Lutter approached the defendants and displayed his badge (TR. 46, 82). The defendants were seated near each other on the bus (TR. 40, 101). Investigator Lutter asked the defendants to step off of the bus with their belongings and stated that they were not under arrest, but the officers wanted to discuss suspected marijuana use (TR. 15, 83-84). The defendants grabbed their possessions and stepped off of the bus (TR. 15). Specifically, Monk exited the bus with a green bag, which was located in the overhead compartment next to a black roll-away suitcase (TR. 15, 65, 85). Burgess did not take any luggage off of the bus, but stated her belongings were in the green bag (TR. 47, 85). Both defendants denied ownership of the black suitcase (TR. 85).

When they were all outside the bus, approximately four feet away, Investigator Lutter identified himself and explained his observations (TR. 15). Investigator Lutter then asked the defendants if they had any contraband on them (TR. 15, 85-86). Burgess revealed a small bag of marijuana hidden in her brassiere and stated that was it (TR. 16, 39, 86, 102).

Monk said there were no drugs in her bag (TR. 86). Investigator Lutter requested consent to search the green bag (TR. 87). Monk opened the bag and stated there were no drugs in it (TR. 87). Monk began to explain the bag's contents while kneeling over it (TR. 16, 43, 64). Investigator Lutter asked Monk if the officers could search the bag for safety reasons (TR. 44, 58, 87). Monk got up and stepped back from the green bag lifting her arms with bent elbows and palms up, as a gesture to go ahead a search the bag, and stated there was no drugs in the bag (TR. 17, 58, 60). Investigator Scott found a Listerine bottle inside the bag

3

(TR. 17). Investigator Scott testified the bottle was consistent with other contraband, specifically PCP, discovered by himself and the commercial interdiction unit (TR. 17, 46). The length of time between the defendants exiting the bus with the investigators and discovery of PCP was three minutes (TR. 105-06).

Investigator Lutter returned to the bus and removed the black roll-away suitcase (TR. 18, 89). Both Monk and Burgess denied ownership of the suitcase, as did the remaining passengers on the bus (TR. 18, 85, 89). Investigator Lutter searched the black suitcase and found a liter sized, brown label Listerine bottle with the safety seal broken (TR. 19, 90-91). Investigator Lutter opened the bottle and detected a strong chemical order unlike the odor of Listerine (TR. 92). Investigator Lutter suspected the bottle contained PCP, based on his previous experience and training (TR. 90). At that time, Investigator Lutter was not aware of the bottle found by Investigator Scott (TR. 90, 92). The NSP crime lab later tested the contents of the bottles and determined they contained PCP (TR. 17, 19). Both defendants were arrested, but neither made a statement to the officers (TR. 19-20).

## LEGAL ANALYSIS

The defendants argue all evidence obtained on May 21, 2005, during the course of the search of the luggage should be suppressed because the evidence was obtained unlawfully. The defendants argue the investigators unlawfully detained the defendants and the warrantless searches were conducted without consent. The defendants contend they were seized at the time the officers instructed them to leave the bus with their belongings. Further, the defendants contend the suspected marijuana violation does not justify a custodial arrest of the defendants. The government argues the officers initially contacted the defendants for an investigative detention based on the suspected marijuana use and searched the green bag after consent to do so. Finally, the government maintains the defendants do not have standing to contest the search of the black suitcase, which was abandoned.

**A.     Personal Encounter**

Encounters between the police and citizens fall into three general categories:

(1) consensual or voluntary encounters, which are not seizures and do not implicate the Fourth Amendment, **see, e.g., *Florida v. Bostick***, 501 U.S. 429 (1991); ***Florida v. Royer***, 460 U.S. 491 (1983); ***United States v. Tarantola***, 332 F.3d 498, 499 (8th Cir. 2003); ***United States v. Jones***, 269 F.3d 919, 925-26 (8th Cir. 2001); ***United States v. Hathcock***, 103 F.3d 715, 718-19 (8th Cir. 1997); ***United States v. Robinson***, 984 F.2d 911, 913 (8th Cir. 1993);

(2) investigative detentions, which are seizures of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity, **see, e.g., *United States v. Sokolow***, 490 U.S. 1 (1989); ***Reid v. Georgia***, 448 U.S. 438 (1980); ***Terry v. Ohio***, 392 U.S. 1 (1968); ***United States v. Maltais***, 403 F.3d 550, 554 (8th Cir. 2005); ***United States v. Bustos-Torres,*** 396 F.3d 935, 942 (8th Cir. 2005); and

(3) physical arrests, which must be supported by probable cause.  ***U.S. Const. amend. IV.***

The government has the burden to prove the initial encounter was voluntary, or that justification otherwise existed for each increasingly intrusive restraint on the defendant.  **See *Missouri v. Seibert***, 124 S. Ct. 2601, 2608 n.1 (2004); ***United States v. Escobar***, 389 F.3d 781, 785 (8th Cir. 2004) ("The government bears the burden of showing consent was freely and voluntary given and not a result of duress or coercion, and the burden cannot be discharged by showing mere acquiescence to a claim of lawful authority.").  "The determination of which police-citizen contacts fall within the regulation of the Fourth Amendment and which do not is a fact intensive one which turns upon the unique facts of each case."  ***Jones***, 269 F.3d at 925.  The government admits the initial encounter was not consensual and asserts the contact was an investigatory detention.

"It is well established, of course, that a law enforcement officer may detain a person for investigation without probable cause to arrest if the officer 'has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.'"  ***United States v. Maltais***,

5

403 F.3d 550, 554 (8th Cir. 2005) (**quoting *United States v. Sokolow***, 490 U.S. 1, 7 (1989) (internal quotation and citation omitted)). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." ***United States v. Garcia***, 23 F.3d 1331, 1334 (8th Cir. 1994). "[A]n officer may rely on information provided by other officers and all the information known to a team of officers involved in the investigation to provide justification for a stop." ***United States v. Ortiz-Monroy***, 332 F.3d 525, 529 (8th Cir. 2003). Officers may continue the detention for a reasonable period to verify or dispel the suspicion. ***Maltais***, 403 F.3d at 556. However, a detention may become a *de facto* arrest if it lasts for an unreasonably long time, but there is no rigid time limit on an investigatory detention. ***Id***. (**citing *United States v. Sharpe***, 470 U.S. 675, 685 (1985)). In determining whether a period of time is excessive, the court must consider the "law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." ***Sharpe***, 470 U.S. at 685; ***United States v. Bloomfield***, 40 F.3d 910, 917 (8th Cir. 1994) (en banc) (holding one-hour detention upon reasonable suspicion to wait for a drug dog was reasonable).

In this case, the officers made observations, both seeing and smelling, which indicated marijuana use by the defendants. The officers discussed their suspicions prior to contacting the defendants. Based on such observations, the officers made contact with the defendants and asked them to step off of the bus. Although the defendants ultimately were found with only enough marijuana to justify a citation, rather than an arrest,[1] the officers were justified in the temporary investigatory detention of the defendants based on the suspected marijuana use and possession. Finally, here the duration of the detention was approximately three minutes before the officers discovered PCP. Accordingly, the Court finds the detention was not unreasonably long.

---

[1] Neb. Rev. Stat. §§ 28-416(13)(a) and 29-427.

## B.     Consent to Green Bag

A consent search must be voluntary. The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." **Ohio v. Robinette,** 519 U.S. 33, 40 (1996). Some personal characteristics that aid in determining voluntariness of consent are age, intelligence, whether an individual was under the influence of drugs or alcohol, whether an individual was read his *Miranda* rights, and whether an individual had experienced prior arrests. **United States v. Welerford**, 356 F.3d 932, 936 (8th Cir. 2004). A court may also look at environmental factors including, the period of time that the individual was detained; whether the police threatened, physically intimidated, or punished the individual; whether promises or misrepresentations were made upon which the individual relied; whether the individual was in custody or under arrest at the time of consent; whether the consent occurred in a public or secluded place; and whether the individual objected or stood by silently while the search occurred. *Id.*; **United States v. Contreras**, 372 F.3d 974, 977 (8th Cir. 2004).

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." **Bumper v. North Carolina**, 391 U.S. 543, 548-49 (1968) (footnotes omitted). "The government bears the burden of proving voluntary consent [to search] by a preponderance of evidence." **United States v. Galvan-Muro**, 141 F.3d 904, 907 (8th Cir. 1998).

In addition to voluntariness, consent must be obtained from "the defendant or 'from a third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" **United States v. Adams**, 346 F.3d 1165, 1170-71 (8th Cir. 2003) (**quoting United States v. Matlock**, 415 U.S. 164, 171 (1974)). "The relevant inquiry is whether the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the [property]." *Id.*; **compare United States v. Kuenstler**, 325 F.3d 1015, 1020 (8th Cir. 2003) (overnight guest had expectation of privacy in the home in which he was staying and thus the right to invoke the Fourth Amendment). Further, consent may be reasonably implied from behavior, rather than solely

7

verbal affirmance. ***United States v. Williams***, 346 F.3d 796, 799 (8th Cir. 2003) (consent to entry found where individual opened door wide and stepped aside); **see also** ***United States v. Mendoza-Cepeda***, 250 F.3d 626, 627- 629 (8th Cir. 2001) (finding law enforcement reasonably viewed the defendant's gestures as consent to a search); ***United States v. Jones***, 254 F.3d 692, 695 (8th Cir. 2001) (consent to search person found where defendant opened and raised his arms with palms up).

In the present case, no evidence suggests the defendants were threatened, intimidated, or promised anything in return for giving consent to search the green bag. Monk voluntarily consented to the officer's search by opening the bag, stepping away from it and gesturing to the investigators. The conduct led the investigators to reasonably believe Monk consented to the search of the green bag which contained both her own and Burgess's possessions. Although the officers did not specifically tell Monk that she had the right to refuse a search, the officers asked for permission to search in connection with Monk's marijuana use and drug possession. Monk denied the bag contained any contraband and gestured her consent to search. The duration of the pre-search detention was brief and neither Monk nor Burgess objected to the search. Finally, although the officers suspected Monk had earlier ingested marijuana, such use does not negate consent. **See** ***United States v. Gipp***, 147 F.3d 680, 686 (8th Cir. 1998). Monk appeared to understand what was going on, followed directions and otherwise responded appropriately to the officers. The Court finds Monk voluntarily gave consent for the officers to search the green bag.

### C.   Search of Black Suitcase

It is unclear from the defendants' motion and argument whether they seek suppression of the contents of the black suitcase. Accordingly, the Court will evaluate the merits of such a claim. "The Eighth Circuit has consistently upheld searches when a defendant disclaims an interest in the property being searched, either for lack of standing, or under the principle of abandonment, or both." ***United States v. Thompson***, 359 F. Supp. 2d 862, 865-66 (D. N.D. 2005) (listing cases). The warrantless search of abandoned property does not violate the fourth amendment. ***Abel v. United States***, 362 U.S. 217, 241 (1960). Further, "[w]hen a

person voluntarily abandons property, he or she forfeits any expectation of privacy that he or she might otherwise have had in it." **United States v. Washington**, 146 F.3d 536, 537 (8th Cir. 1998) (citations omitted). "Whether an abandonment has occurred is determined on the basis of objective facts available to the investigating officers, not on the basis of the owner's subjective intent." **United States v. Tugwell**, 125 F.3d 600, 602 (8th Cir. 1997). To determine whether an item is abandoned, the court evaluates the circumstances including denial of ownership and physical relinquishment of the property. **United States v. Landry**, 154 F.3d 897, 899 (8th Cir. 1998).

Here, the defendants denied ownership of the black suitcase and left the suitcase on the bus. By denying ownership of the suitcase and leaving it beyond when they gathered their other belongings, the defendants abandoned the black suitcase. **See United States v. Sanders**, 130 F.3d 1316, 1317-18 (8th Cir. 1997) ("[The Defendant's] statements to the officers that he did not own the bag were sufficient to constitute abandonment" even if the officers knew he was lying. "The Fourth Amendment only protects privacy. It does not immunize people who, finding themselves in a compromising situation, voluntarily trade their interest in privacy for a chance to escape incrimination, no matter how unwise the decision may seem in retrospect."). The Court concludes the defendants had no expectation of privacy in the suitcase and no standing to challenge the constitutionality of the investigator's search. The defendants' statements and actions were sufficient to constitute abandonment and support a lack of standing. Upon consideration,

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Shanlenna F. Burgess's and Stephanie L. Monk's Motion to Suppress Evidence (Filing No. 22) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any

objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 14th day of October, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge